**Entered on Docket
June 06, 2007**

_____
**Hon. Bruce A. Markell
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re:<br><br>JASON M. RANSOM,<br><br>Debtor. | Case No.: BK-S-06-11566-BAM<br><br>Chapter 13<br><br>Date:  N/A<br>Time:  N/A |

**MEMORANDUM DENYING CONFIRMATION**

On July 5, 2006, debtor Jason Ransom filed for protection under Chapter 13 of the Bankruptcy Code,[1] and at that time, he also filed a Chapter 13 Plan (the "Plan") and Statement of Current Monthly and Disposable Income ("Form B22C").  On August 25, 2006, the trustee filed an opposition to plan confirmation, recommending denial of confirmation on the basis that Mr. Ransom was improperly taking a deduction on Form B22C for a vehicle that he owned free of any lien.  On September 5, 2006, MBNA America Bank, N.A. ("MBNA") and Chase Manhattan Bank USA, N.A. ("Chase"), both creditors in this bankruptcy case, filed a joint objection to confirmation, also based on Mr. Ransom's decision to take a deduction on Form B22C for a vehicle that was paid in full.  An evidentiary hearing was held on January 25, 2007, at which time the court requested additional briefing on the subject.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, Title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  Pub. L. 109-8, 119 Stat. 23 (2005).

1

In his Brief in Support of Confirmation, Mr. Ransom argues five main points. First, Mr. Ransom argues that, notwithstanding the fact that Section 1325(b)(3) specifically references Section 707(b)(2)(A) & (B) for a list of permissible expense deductions in determining "projected disposable income," Section 707 cannot apply in Chapter 13 because Section 103(b) states that "subchapters I and II of chapter 7 of this title apply only in a case under" Chapter 7. 11 U.S.C. § 103(b). Second, Mr. Ransom argues that "even if the § 707(b)(2) expenses apply in Chapter 13, because that section is specifically referred to in § 1325(b)(3), it would not apply in this situation. Section § 707(b)(2) incorporates § 707(b)(1), which involves 'abuse' and the dismissal or conversion of a chapter 7, not confirmation of a chapter 13 plan." Brief in Support of Confirmation, Doc. #27, p. 2-3. Third, Mr. Ransom argues that the test under Section 707 should not be applied in Chapter 13, because the language in Section 1325(b)(2) regarding "amounts reasonably necessary to be expended" implies that the amounts should be reasonably necessary and therefore grounded in fact, using a determination of expenses under Schedule J. Fourth, Mr. Ransom argues that the plain language of Section 707(b)(2) permits debtors to deduct the car ownership expense even if a debtor's vehicle is paid in full. Finally, Mr. Ransom argues that the 'Means Test' under Section 707(b) is unconstitutional under an Equal Protection analysis.

The court does not find any of the arguments persuasive and will address each in turn, below.

## Section 707's Application to Chapter 13

Although Mr. Ransom is correct that Section 103(b) clearly states that Subchapters I and II of chapter 7 (Section 707 is found under Subchapter I) apply only in cases under Chapter 7, Section 1325(b)(3) specifically references Section 707 for purposes of determining reasonably necessary expenses. Generally, "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one . . . ." Morton v. Mancari, 417 U.S. 535, 550-51 (1974). Here, Section 1325(b)(3) is narrower than Section 103(b); whereas Section 103(b) makes a sweeping statement about the first two Subchapters of Chapter 7, Section 1325(b)(3) specifically

2

references Section 707(b)(2) for the sole purpose of calculating appropriate expenses for deduction in determining "projected disposable income."

Furthermore, Section 103(b) and Section 1325(b)(3) are not in direct conflict, as Section 1325(b)(3) only requires that amounts reasonably necessary to be expended be determined "in accordance with" Section 707(b)(2)(A) & (B). 11 U.S.C. § 1325(b)(3). Thus, Section 1325(b)(3) does not directly incorporate Section 707(b)(2), but rather uses its text as a guideline for determining expenses. Section 707(b)(2) does not *apply* in Chapter 13; it only provides guidance for a determination of expenses under Section 1325(b)(3).

### Section 707(b)(2) and its incorporation of Paragraph (1)

Mr. Ransom next argues that Section 707(b)(2) incorporates Section 707(b)(1), which is focused on abuse in the Chapter 7 context, therefore rendering Section 707(b)(2) inapplicable in the Chapter 13 context. As described in the previous section, Section 1325(b)(3) only determines expenses "in accordance with" the expenses listed in Section 707(b)(2)(A) & (B). It does not directly apply Section 707(b)(2), and therefore it does not incorporate Section 707(b)(1). Even were Section 1325(b)(3) to directly apply Section 707(b)(2), it would nevertheless not automatically incorporate Section 707(b)(1). *See* Sunahara v. Burchard (*In re* Sunahara), 326 B.R. 768, 781 (9th Cir. BAP 2005) (holding that Section 1329(b)'s reference to Section 1325(a) – which itself references Section 1325(b) – does not automatically incorporate Section 1325(b) into Section 1329(b)).

### Using Schedules I & J in Chapter 13

Mr. Ransom further argues that reasonably necessary expenses should be determined using Schedules I & J, as they are the more accurate measurement of "amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). This issue was addressed by this court in *In re* Slusher, 359 B.R. 290, 300 (Bankr. D. Nev. 2007). In *Slusher*, this court held that Form B22C serves only as a presumptive guide in any determination of "projected disposable income" as required by Section 1325(b)(1)(B). "For above-median debtors . . ., this presumption is further strengthened by the

3

language in Section 1325(b)(3), but it remains a presumption nevertheless." *Id.* Thus, although Mr. Ransom is correct that Schedules I & J can be utilized in a determination of "projected disposable income" under Section 1325(b), pursuant to *Slusher*, Form B22C remains the presumptive determination of "projected disposable income." Mr. Ransom has provided no evidence, such as a change of circumstances, supporting a determination by this court that the presumptive figures from Form B22C should not be followed.

<u>Vehicle Ownership Expense</u>

Having determined that this court will use the expenses listed in Section 707(b)(2) in calculating "projected disposable income," the next issue is whether the plain language of Section 707(b)(2) allows the debtor to deduct the full vehicle ownership expense despite the fact that the debtor's vehicle is not encumbered by a lien and is paid in full. For the reasons set forth in *In re Slusher*, 359 B.R. at 305-310, the court finds that Mr. Ransom may only deduct a vehicle ownership expense if he is currently making loan or lease payments on that vehicle. Furthermore, because the vehicle in question is a 2004 model year, Mr. Ransom cannot deduct an additional operating expense absent a showing that the vehicle's mileage exceeds 75,000 miles. *See Id.* at 310 ("'[C]onsistent with IRS Local Standards, [the debtors] are entitled to claim on Form B22C an additional operating expense of $200, which expense is allowed for debtors with cars more than six years old, or having more than 75,000 miles'"), *quoting In re* McGuire, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006).

<u>Constitutional Concerns</u>

Finally, Mr. Ransom argues that the Means Test found in Section 707(b) is unconstitutional because it discriminates based on gender in a manner that violates equal protection under the Fifth Amendment's Due Process clause. *See* Bolling v. Sharpe, 347 U.S. 497 (1954) (holding that equal protection applies to the federal government through the Fifth Amendment's Due Process clause). Mr. Ransom states that studies have shown a disparity between the incomes of women and men, with men earning more than women. *See* ELIZABETH WARREN & AMELIA WARREN TYAGI, THE

4

TWO-INCOME TRAP 31, n.60 (2003). However, with this as his factual background, Mr. Ransom then makes two contradictory arguments. First, he argues that "even if women qualify for chapter 7 initially, they are unlikely to get to use the deductions in § 707(b)(2)(A)(ii)(I) and may subject them to dismissals for abuse, at a greater rate than men." Brief in Support of Confirmation, Doc. #27, p. 4. Mr. Ransom then argues that due to their higher wages, "males seeking to file bankruptcy are more likely compelled to file chapter 13's then [sic] chapter 7's." Reply to Response Brief to Debtor's Brief in Support of Confirmation, Doc. #30, p. 2.

It is hard for this court to ascertain the precise discriminatory impact present here when Mr. Ransom argues on the one hand that the Means Test harms women, then on the other hand argues that it harms men. Regardless, the court will consider only the second argument from a constitutional standpoint because the first argument is premised on an incorrect understanding of the Means Test. Mr. Ransom's first argument is that because of women's generally lower wages, their incomes are less likely to be above-median than those of men. As a result, they will not have access to the default expense deductions found in Section 707(b)(2)(A)(ii)(I), and consequently their cases are more likely to be dismissed for abuse. However, if a debtor falls below median income, they are not required to complete the full Means Test and no presumption of abuse arises. *See* 11 U.S.C. § 707(b)(7). Thus, the fact that women are less likely to fall into the above-median class of debtors, and therefore will not have access to the Section 707(b)(2)(A)(ii)(I) expense deduction, can only benefit them; this is in direct contradiction to Mr. Ransom's first argument.

The second argument, however, deserves a more careful constitutional analysis. Mr. Ransom argues that the fact that men generally receive higher wages than women means that they are more likely to be above-median debtors. They therefore are more likely to be forced into Chapter 13 under the Means Test. This, he argues, amounts to improper discrimination based on gender deserving of intermediate scrutiny. Intermediate scrutiny is used for classifications based

on gender,[2] illegitimacy,[3] and the education of undocumented alien children,[4] among other suspect classes, and it requires the government to bear the burden of proof in showing that a classification by gender "serve[s] important governmental objectives and [is] substantially related to those objectives." Craig v. Boren, 429 U.S. 190, 197 (1976).

However, intermediate scrutiny is not the appropriate level of scrutiny to apply to this issue. Discriminatory impact alone is insufficient to prove a gender classification. If a law is facially neutral, a gender classification requires proof that there is a discriminatory purpose behind the law. *See* Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256 (1979) (holding that a discriminatory impact is insufficient to prove a gender classification; there must be proof of discriminatory purpose). Although Mr. Ransom has alleged a discriminatory impact, he has neither alleged nor provided any evidence supporting a discriminatory purpose behind the Means Test.

As a result, the proper level of scrutiny to apply in determining whether the Means Test under Section 707(b) meets the requirements of equal protection is rational basis review. *See* United States v. Kras, 409 U.S. 434, 446 (1973) ("[B]ankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational justification."). Rational basis review requires the challenger to bear the burden of proof in showing that the challenged law is not "rationally related to a legitimate state interest." New Orleans v. Dukes, 427 U.S. 297, 303 (1976); *see also* Hodel v. Indiana, 452 U.S. 314, 331-332 (1981) ("Social and economic legislation . . . that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate government purpose. Moreover, such legislation carries with it a presumption of rationality that can only be overcome

---

[2] *See, e.g.*, United States v. Virginia, 518 U.S. 515 (1996).

[3] *See, e.g.*, Lehr v. Robertson, 463 U.S. 248 (1983).

[4] *See, e.g.,* Plyler v. Doe, 457 U.S. 202 (1982).

by a clear showing of arbitrariness and irrationality.").

Thus to succeed in his argument, Mr. Ransom must show either that the Means Test is not based on a legitimate governmental purpose or that it is an arbitrary and unreasonable means of accomplishing that purpose. He has failed to demonstrate either here. The Means Test appears to be predicated on a governmental desire to curb abuses in the bankruptcy system and require debtors who can afford to repay some of their debts to file under Chapter 13. *See* H.R. REP. NO. 109-31, pt. 1, 1st SESS. 79 (2005) ("The heart of [BAPCPA]'s consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism . . . which is intended to ensure that debtors repay creditors the maximum they can afford."). Although the Means Test is not a perfect solution, the current form of the Means Test is neither arbitrary nor unreasonable, as those terms are used in constitutional law. It attempts to meet the government's expressed goal and creates a valid framework by which that goal can be accomplished. Therefore, the Means Test survives rational basis review and does not violate equal protection under the Fifth Amendment's Due Process clause.

## Conclusion

All of the debtor's arguments regarding the Means Test or the vehicle ownership expense fail on careful analysis. Mr. Ransom's proposed plan provides that he will pay $500 a month for sixty months to the trustee. Of that, only $389 a month goes to unsecured creditors. However, the debtor must devote all of his projected disposable income to payments to unsecured creditors under the plan. *See* 11 U.S.C. § 1325(b)(1)(B). Mr. Ransom's proposed plan does not satisfy this test; his projected disposable income based on Form B22C is $681.55 (listed disposable income of $210.55 plus $471 due to disallowance of the vehicle ownership expense deduction). Because Mr. Ransom's proposed plan does not devote all of his projected disposable income to payments to unsecured creditors under the plan, the court hereby DENIES confirmation of Mr. Ransom's Chapter 13 Plan #1.

The court also notes that during oral argument, counsel for the debtor expressed a desire

to appeal this issue in light of this court's recent holding in *Slusher*. 359 B.R. 290 (Bankr. D. Nev. 2007). An order denying confirmation is not a final order. *See* Bartee v. Tara Colony Homeowners Ass'n (*In re* Bartee), 212 F.3d 277, 283 (5th Cir. 2000) ("In the case of a denial of confirmation of a plan, we look to whether or not the order was intended to serve as a final denial of the relief sought by the debtor. If the order was not intended to be final – for example, if the order addressed an issue that left the debtor able to file an amended plan (basically to try again) – appellate jurisdiction would be lacking."); *see also* Nicholes v. Johnny Appleseed (*In re* Nicholes), 184 B.R. 82 (9th Cir. BAP 1995). The District Court or Bankruptcy Appellate Panel may, however, hear an appeal from an interlocutory order at its discretion, if the bankruptcy court certifies that its order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States . . . ." 28 U.S.C. § 158(d)(2)(A)(i). Here, no controlling decision exists that addresses the issues found in this opinion and in *Slusher*. Furthermore, unless the District Court or Bankruptcy Appellate Panel agrees to hear an appeal on this issue as an interlocutory order, no reasonable means exist whereby this issue could be appealed, in this case or any other. Therefore, the court would favorably entertain a motion to certify the accompanying order for appeal.

Copies sent to:

Christopher P. Burke; atty@cburke.lvcoxmail.com

Jeremy T. Berkstrom; mbergstrom@mileslegal.com

Rick A. Yarnall; ecfmail@lasvegas13.com

Jason M. Ransom
4555 E. Sahara Ave. #226
Las Vegas, NV 89104

# # #